AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Utah

| Eagle View Technologies, et al. | )  |
|---|---|
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 2:22-cv-00215-TS-DAO |
| GAF Materials LLC | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Vexcel Imaging US Inc.

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place:<br>Veritext Legal Solutions, 1160 Lincoln Street, Suite 2250, Denver, Colorado 80264 | Date and Time:<br>11/03/2023 |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/20/2023

| _CLERK OF COURT_ | |
|---|---|
| | OR |
| | Edward L. Tulin |
| _Signature of Clerk or Deputy Clerk_ | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_
GAF Materials LLC                                        , who issues or requests this subpoena, are:
Edward L. Tulin, 41 Madison Avenue, New York, New York 10010, edward@gishpllc.com, 212-518-2332

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2:22-cv-00215-TS-DAO

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                          *Server's signature*

                                                    _____
                                                          *Printed name and title*

                                                    _____
                                                          *Server's address*

Additional information regarding attempted service, etc.:

EXHIBIT 1

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

EXHIBIT 1

## ATTACHMENT A

### DEFINITIONS

1.      "Antitrust-Related Violation" means a violation of the U.S. federal antitrust laws, including but not limited to the Sherman Antitrust Act of 1890 (15 U.S.C. §§ 1–7), the Clayton Antitrust Act of 1914 (15 U.S.C. § 12 et seq.), and the Federal Trade Commission Act of 1914 (15 U.S.C. § 41 et seq.), and their state law corollaries.

2.      "Eagleview" means Eagle View Technologies, Inc. and its directors, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors-in-interest, successors-in-interest, and any other legal entities, whether foreign or domestic, that are or were owned or controlled by the foregoing.

3.      "GAF" means "GAF Materials LLC" and its directors, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors-in-interest, successors-in-interest, and any other legal entities, whether foreign or domestic, that are or were owned or controlled by the foregoing.

4.      "Including" means including but not limited to.

5.      "Integration Agreement" means the Integration Agreement entered into as of November 5, 2021.

6.      "The *Nearmap* Action" means *Eagle View Techs., Inc. et al. v. Nearmap US, Inc.*, Case No. 2:21-cv-00283-TS-DAO (D. Utah).

7.      "Pictometry" means Pictometry International Corp. and its directors, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors-in-interest, successors-in-interest, and any other legal entities, whether foreign or domestic, that are or were owned or controlled by the foregoing.

8.      "Plaintiffs" means Eagleview and/or Pictometry, as those terms are defined above, both collectively and individually.  A request calling for, e.g., "Plaintiffs'" communications should be interpreted as calling for communications made by either of Eagleview or Pictometry, including communications made by one such party on behalf of or in a representative capacity representing the other.

EXHIBIT 1

9.    "Settlement Agreement" means the Settlement Agreement entered into and effective as of November 5, 2021.

10.    "Verisk" means Verisk Analytics Inc. and its directors, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors-in-interest, successors-in-interest, and any other legal entities, whether foreign or domestic, that are or were owned or controlled by the foregoing.

11.    "Vexcel" means Vexcel Imaging US Inc., i.e., the company in which, as of March 23, 2022, Verisk held a 43.3% minority ownership, and its directors, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors-in-interest, successors-in-interest, and any other legal entities, whether foreign or domestic, that are or were owned or controlled by the foregoing.

12.    "Xactware" means Xactware Solutions, Inc. and its directors, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors-in-interest, successors-in-interest, and any other legal entities, whether foreign or domestic, that are or were owned or controlled by the foregoing.

13.    "The *Xactware* Patent Action" means *Eagle View Techs., Inc. et al. v. Xactware Solutions et al.,* Case No. 1:15-cv-07025 (D.N.J.).

14.    "You" and "Your" refers to Verisk, as defined above.

15.    "Documents" is synonymous in meaning and equal in scope to the usage of that term as defined in Rule 34 of the Federal Rules of Civil Procedure, and including, without limitation, letters, correspondence, memoranda, notes, reports, records, agreements, working papers, communications, summaries or records of conversations, calendars, diaries, forecasts, statistical statements, graphs, laboratory or research reports and notebooks, charts, minutes or records of conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports of or summaries of interviews, reports of or summaries of investigations, opinions or reports of consultants, patents and patent application materials, patent appraisals, printed publications, trademark applications, certificates of registration, opinions of counsel, memoranda of agreements, assignments, licenses, reports of or summaries of either negotiations within or without Plaintiffs or preparations for such; bulletins; material and manufacturing specifications, material packaging, manufacturing logs, equipment specifications and operating information, product packaging, designs, instructions, advertisements, literature, work assignments, memoranda of conversations, notes, notebooks, drafts, data sheets, worksheets,

EXHIBIT 1

contracts, minute books of account, orders, invoices, statements, bills, checks, vouchers, photographs, drawings, charts, catalogs, brochures, computer files, computer discs, articles, manuals, pamphlets, advertisements, circulars, press releases, drafts of any documents, books, instruments, accounts, bills of sale, tapes, electronic communications including e-mails, telegraphic communications, text messages, multimedia messages, chat messages, instant messages, voicemail messages, original or preliminary notes, and all other materials of any tangible medium of expression.

EXHIBIT 1

## DOCUMENTS AND THINGS REQUESTED

1.      All drafts of the Settlement Agreement and Integration Agreement, and all draft term sheets or proposals relating to either of the foregoing.

2.      All Documents constituting, reflecting, regarding, or relating to Your communications with one or more of Plaintiffs relating to the settlement of the *Xactware* Patent Action, including any such communications relating to the Settlement Agreement and the Integration Agreement.

3.      All Documents regarding or relating to the motivation(s) and reason(s) for, negotiation of, execution of, and Plaintiffs' and Your performance under, the Settlement Agreement and Integration Agreement.

4.      All notes, video or audio recordings, stenographic records, voicemail messages, or other Documents regarding or relating to any in-person or virtual meetings (including Zoom, WebEx, Teams, or other similar platform) regarding or relating to the Settlement Agreement or the Integration Agreement.

5.      All Documents regarding or relating to Your evaluation, analysis, assessment, and description of the competitive landscape for the sale of rooftop aerial measurement products since January 1, 2012, including Documents relating to Your analysis or identification of actual and potential competitors, Your and Your competitors' market shares, the geographic scope of competition, the robustness of competition, Your and Your competitors' strengths and weaknesses, barriers to entry, and any other competitive dynamics.

6.      Documents sufficient to show the entities and products that overlap, compete, potentially overlap, or potentially compete with You and Your rooftop aerial measurement products in each of the construction, government, insurance, solar, and utilities industries since January 1, 2012.

7.      Documents sufficient to identify and describe the rooftop aerial measurement products developed, sold, or offered for sale by You since January 1, 2012 (including but not limited to any such products offered for sale to GAF, and including but not limited to RealTwiin-branded reports).

8.      Documents sufficient to show the design, operation, method of generating, contents, and user interface(s) for the rooftop measurement product that You offered to GAF in the May 2022 timeframe for sale in the U.S. starting in the May 2023 timeframe.

9.      Documents sufficient to show the price points at which You have offered rooftop aerial measurement products since January 1, 2012.

EXHIBIT 1

10.     Documents sufficient to show Your revenue from the sale of rooftop aerial measurement products, and the number of rooftop aerial measurement products sold, on a quarterly basis, from January 1, 2012, to the present.

11.     Documents sufficient to show Your revenue from the sale of survey-grade land survey products derived from aerial imagery or aerial imagery from drones, and the number of such products sold, on a quarterly basis, from January 1, 2012, to the present.

12.     All Documents containing any comparison of any products (including roof measurement reports, exterior roof and/or wall measurements derived from aerial imagery or aerial imagery from drones, and survey-grade land survey products derived from aerial imagery or aerial imagery from drones) made or sold by You to any claim(s) of any patent owned or licensed by one or more of Plaintiffs.

13.     All Documents relating to the rationale, risks, benefits, downsides, negotiation, and effects (including actual, potential, or anticipated impacts) from the Settlement Agreement on (i) You; (ii) Plaintiffs; (iii) Your and Plaintiffs' customers or potential customers; (iv) Your and Plaintiffs' competitors; and (v) the competitive dynamics and landscape for the sale of rooftop aerial measurement products).

14.     All Documents and communications regarding, reflecting, or relating to any analysis of any risk, including the risk of Antitrust-Related Violations, associated with the Settlement Agreement, Integration Agreement, or any other agreements with Plaintiffs.

15.     All Documents and communications regarding, reflecting, or relating to negotiations with GAF for the sale of, purchase of, or any other commercial transactions relating to, rooftop aerial measurement products.

16.     All Documents that constitute, reflect, relate to, or regard communications between one or more of Plaintiffs and You regarding or relating to GAF.

EXHIBIT 1